[No. 23181.  Department One.  January 18, 1932.]

. H. W. WHITE, *Appellant*, v. H. J. ARMSTRONG,
*Respondent.*[1]

*Edwin H. Flick* and *Herald A. O'Neill,* for appellant.

*Rummens & Griffin* and *McBurney & O'Brien,* for respondent.

MITCHELL, J.—This action, brought by H. W. White against H. J. Armstrong, was tried without a jury. The plaintiff has appealed from a judgment dismissing the action, the judgment being entered upon findings and conclusions in favor of the defendant.

In February, 1927, the H. J. Armstrong Co. of Oregon, a corporation, hereinafter called the Armstrong Company, and the appellant, H. W. White, entered in-

[1]Reported in 7 P. (2d) 12.

to a business venture by which the appellant purchased twenty thousand dollars worth of machinery and logging equipment and delivered it to the Armstrong Company to resell on a commission and profit-sharing basis. The business continued until September 16, 1927, at which time the appellant conveyed the remaining machinery and. logging equipment to the Armstrong Company in consideration of its six months promissory note to him in the sum of fourteen thousand dollars (which amount included two thousand dollars agreed to as anticipated profits for the appellant) and a chattel mortgage given by the Armstrong Company on the machinery and logging equipment to secure the payment of the note.

The appellant at once endorsed the note in blank and delivered it to the First National Bank of Everett, the bank paying to him the sum of fourteen thousand dollars. Thereafter, and prior to the maturity of the note, the Armstrong Company made certain payments on the note at the bank. On the date the note became due, the bank, at the request and for the benefit of the appellant, extended the time of payment for three months, to June 16, 1928, and endorsed such extension on the note. Thereafter and prior to June 16, the respondent, H. J. Armstrong, and one Toye endorsed the note under circumstances, as found by the court, as follows:

"That after the aforesaid extension had been made and before the 16th day of June, namely, on about the last day of April or the first day of May, 1928, L. L. Crosby, who was at said time the vice-president of said First National Bank of Everett, Washington, and who at said time was the agent of the plaintiff, and who at said time was a silent and secret partner of the plaintiff in the transactions herein referred to, induced the defendant and one Z. A. Toye to endorse their names upon the back of said note beneath the name of the

plaintiff as it was then endorsed thereon, and, representing said bank as its vice-president and also representing the plaintiff as agent, the said Crosby agreed to and with the defendant and said Toye that, if they would endorse their names severally upon the back of said note, that by so doing neither thereof would create nor admit any liability whatever to the plaintiff, but that, in so doing, their several obligations should at all times be junior, inferior, subject and subsequent to the obligation of the plaintiff on said note in virtue of his endorsement thereon, and that in no respect should the said defendant or said Toye in any way or manner become liable to the plaintiff, and thereupon, upon said understanding and agreement, the defendant and the said Toye did sign their respective names on the back of said note underneath and below the name of the plaintiff as it then and theretofore had been endorsed thereon.''

On June 18, 1928, two days after the due date of the note under the extension agreement, the bank, still being the owner and holder of the note, again extended the time of payment, at the instance and request of appellant, for an additional three months, whereupon the respondent and Toye consented in writing to the extension already made upon the express understanding, as the court found on a preponderance of the evidence, as follows:

''That neither the defendant nor the said Toye should in any way or manner or to any extent whatever become liable to the plaintiff on account of any indebtedness owing on said promissory note, but with the distinct understanding and agreement that the plaintiff would protect, save and hold the defendant and Toye harmless from any and all obligation under said note and the debt evidenced thereby.''

Further facts may be stated in the language of the findings made by the trial court as follows:

''That the said $14,000 note was not paid at the time of the expiration of the extension, namely, on about

the 16th day of September, 1928, and the same was by said bank, who was still the owner and holder thereof, carried as over-due paper down until the 16th day of March, 1929, on which date the said corporation having theretofore paid divers sums of money on account of the principal and interest on said note, which money it had received through sale of the mortgaged machinery, so that on said date all interest had been paid, but there was due and owing the sum of $8,000 on account of the principal; and that on, to-wit, the said 16th day of March, 1929, for the purpose of evidencing the unpaid indebtedness of said $14,000 note, said corporation made and executed its promissory note in the sum of $8,000, which is pleaded in the plaintiff's complaint, and delivered the same to said bank; and it was thereupon agreed by and between the plaintiff and the defendant and Z. A. Toye and the First National Bank of Everett, Washington, that, upon said note being so delivered to said bank, that the said plaintiff would, and he thereupon did, endorse his name upon the back of said note and place the same in the hands of said bank as its property; and that the defendant and Toye would thereafter endorse their names upon the back of said note subsequent in point of time and below the signature of the plaintiff thereon, and that, in so doing, that neither the defendant nor Toye should become liable to the plaintiff in any sum whatever, but that their said endorsement should be subsequent, junior and inferior to the endorsement of the plaintiff; and that neither the defendant nor said Toye should, by reason of such endorsement, or otherwise, or at all, become liable to the plaintiff on said note; but that, to the contrary, the plaintiff should at all times protect, save and hold the defendant and said Toye harmless from all liability on account of said note; and that, in pursuance of such arrangement, the said note was executed by said corporation and by it delivered to said bank, and thereafter was endorsed by the plaintiff; and that, subsequent thereto in point of time, the said note was endorsed on the back thereof by the defendant and Toye; that, at all times thereafter, the said bank continued to hold the said note down until the

month of February, 1930, at which date the said bank made a demand upon the plaintiff that the plaintiff repay the bank the sum of $8,000 and redeem said note, and thereupon, the plaintiff did pay the said bank the sum of $8,000, with all unpaid interest which had accrued thereon, whereupon the bank surrendered said note to the plaintiff, and the plaintiff, by virtue of having so redeemed said note, has at all times since been the owner and in possession thereof.

"That in truth and in fact the said Crosby, during all of the times herein mentioned, was the secret and silent partner of the plaintiff in said joint adventure and in the ownership of said notes and the debt evidenced thereby, and in fact the plaintiff did pay to the said Crosby the sum of $1,000 which represented one-half of the anticipated profits hereinabove referred to."

Accordingly, the conclusion of the trial court was that there was no liability against the defendant on account of the $8,000 note involved in the action, nor at all, and that the action against the defendant should be dismissed.

In considering the assignments of error, it will be kept in mind that this is not a suit by the bank, to whom the note was endorsed and delivered by the payee, against the Armstrong Company, the original maker of the note, nor is it a suit by the payee in the note against the original maker of it, nor is it a suit by the bank at all; therefore the question as to whether the appellant and the respondent by their endorsements became joint makers, a question so much discussed by the appellant, is not important. On the contrary, the suit is by the person named as payee and against a third person who became an endorser of the note after it had been endorsed by the payee and delivered to the bank, such third party endorser becoming such with the specific understanding and agreement that his endorsement should create no liability

or obligation whatever in favor of the plaintiff in this suit.

Appellant makes three assignments of error:

██ "The court erred in allowing any testimony with relation to the transactions covering the joint venture and the $14,000 note, as such, as distinguished from evidence relating to the $8,000 note."

Upon a preponderance of the evidence, without considering that relating to the $14,000 note, it does appear to us that there is enough to deny the appellant any kind of recovery on the $8,000 note or any purported obligation growing out of it as alleged in his complaint; but, if so, the evidence complained of in this assignment does him no harm, and, whether necessary or not, it appears to throw some light upon the testimony concerning the relation of the parties to the $8,000 note involved in the suit.

██ "The court erred in admitting parol testimony relating to and affecting the interpretation of the notes in issue."

Clearly, however, the appellant was not a holder in due course of the note with respect to the endorsement of the respondent. When appellant paid the bank what he owed it and got possession of the note, he only paid the bank what he, himself, owed it, and acquired thereby no new right against the respondent because of respondent's endorsement of the note after the appellant, as payee, had endorsed and delivered it to the bank, respondent's endorsement being made with the specific understanding that the respondent should in no way or manner become liable to the appellant thereby. The controversy now is between the original parties to that specific understanding of non-liability; and, as between them, the instrument is a non-negotiable one under which the evidence objected to was as competent and material as would be proof of lack of con-

sideration or other matter affecting the enforceability of it as an apparent obligation.

██ "That the court erred in giving judgment of dismissal to the defendant Armstrong."

This assignment is general, without referring specifically to any one or more of the full and complete findings of fact made and entered in the cause, and goes to the merits of the controversy upon the facts. The statement already made herein of the facts, whether appearing as formally made by the trial court or not, is, altogether, correctly, or substantially, as found by the trial court, and, in our opinion, is fully sustained by a fair preponderance of the evidence. The judgment is in exact accordance with the understanding of parties at the time the appellant procured the endorsement of respondent, viz: that it should in no manner whatever create any liability in favor of the appellant.

Affirmed.

TOLMAN, C. J., PARKER, BEELER, and HERMAN, JJ., concur.